COOLEY LLP
MICHELLE C. DOOLIN (179445)
(mdoolin@cooley.com)
10265 Science Center Drive
San Diego, California 92121-1117
Telephone: +1 858 550 6000
Facsimile: +1 858 550-6420

MAURICE W. TREVOR (316685)
(rtrevor@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: +1 415 693 2000
Facsimile: +1 415 693-2222

Attorneys for Defendant Shake Shack Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVIVA COPAKEN, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>SHAKE SHACK INC.,<br><br>    Defendant. | Case No. 2:25-CV-01734<br><br>**DEFENDANT SHAKE SHACK INC.'S RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Hon. Josephine L. Staton |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

SHAKE SHACK'S RESPONSE
TO ORDER TO SHOW CAUSE
CASE NO. 2:25-CV-01734

## I.    INTRODUCTION

Defendant Shake Shack Inc. ("Shake Shack") submits this memorandum in response to the Court's Order to Show Cause (the "Order") directing briefing on "why CAFA's amount-in-controversy requirement is met." ECF No. 11 at 2.  Shake Shack respectfully submits that the Court may exercise jurisdiction over Plaintiff Aviva Copaken's Complaint (ECF No. 1-1 at Ex. 1) because the Complaint satisfies the $5 million jurisdictional minimum under the Class Action Fairness Act ("CAFA") by seeking to recover the full cost of Plaintiff's and the putative class's Shake Shack delivery purchases—not just the service and courier fees associated with those orders.  The Complaint repeatedly alleges that "but for" Shake Shack's alleged deception regarding these fees, Plaintiff would not have ordered delivery from Shake Shack at all and would have chosen another restaurant instead.

The caselaw confirms that this allegation should be treated as a claim that the defendant's product is worthless, providing an "avenue through which Plaintiff would be entitled to damages associated with Defendant's revenue derived from all food and beverages purchases."  Order at 2.   Facing substantively identical allegations, courts in this District and around California regularly look to the full purchase price of the item at issue when considering whether CAFA removal was proper.

Although Shake Shack disputes Plaintiff's allegations, courts take as true the allegations in a complaint when assessing CAFA removal.   Here, Plaintiff's allegations, taken as true, place more than $5 million dollars in controversy (even without accounting for Plaintiff's demands for punitive damages, injunctive relief, and attorney's fees).

## II.    ARGUMENT

The Order directs the parties to answer the narrow question whether, in calculating the amount in controversy under Plaintiff's Complaint, the Court should consider revenue Shake Shack derived from "food and beverage purchases" from

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1

SHAKE SHACK'S RESPONSE
TO ORDER TO SHOW CAUSE
CASE NO. 2:25-CV-01734

putative class members, rather than the amount of the "Service Fee" and "Courier Fees" alone.  Order at 2.  The plain text of the Complaint indicates that the full purchase price of Plaintiff's and the proposed class's delivery orders is at issue, and Shake Shack has satisfied its "burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million."  *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 771–72 (9th Cir. 2020) (citing *Ibarra v.Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).

### A.    The Complaint Seeks to Recover All of Shake Shack's California Revenue from Purchased Delivery Orders, Which Is Over $5 Million.

Plaintiff's Complaint asserts not only that she paid too much in improperly disclosed fees but also alleges that the broader design of Shake Shack's online ordering process is misleading and caused her to make purchases she otherwise would not have.  Plaintiff contends that she and the putative class "would not have made the[ir] purchase[s] if [they] had known that Shake Shack would tack on additional fees." Compl. ¶ 45.  Plaintiff's Complaint centers around Shake Shack's implementation of a so-called "drip-pricing" strategy, an allegedly "deceptive checkout practice" that Plaintiff contends was used to manipulate consumers into ordering food from Shake Shack by revealing the challenged fees at the end of the transaction.  *Id.* ¶¶ 18–36.  Plaintiff alleges that because consumers have "already invested substantial time and effort" in a Shake Shack purchase, they choose to complete a purchase that they otherwise would not have made ***at all***.  *Id.* ¶ 33 (alleging that some consumers "notice the previously undisclosed fees but decide to go through with the purchase anyway") (emphasis added).  It is the totality of this alleged drip-pricing strategy that results in the "unjust profits" alleged by the Complaint, especially because Plaintiff charges that this practice allows Shake Shack to "gain[] an unfair upper hand on competitors that fairly disclose their true charge." *Id.* ¶ 36.  Plaintiff asserts as much, contending that but for the drip pricing, class

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2

SHAKE SHACK'S RESPONSE
TO ORDER TO SHOW CAUSE
CASE NO. 2:25-CV-01734

1    members would have patronized one of those competitors: they "would have chosen

2    another method or merchant for ordering [their] food." *Id.* ¶ 46.

3        **This allegation that "Defendant deceived Plaintiff and Class members into**

4    **making purchases *they otherwise would not make*" places the full amount of**

5    **Shake Shack's California delivery revenue—$5,931,619—in controversy.** *Id.* ¶

6    76 (emphasis added); *see also* Decl. of Steph So, ECF No. 1-2 ¶ 5. Indeed, while

7    Plaintiff seeks the more modest relief of "disgorgement of all wrongfully obtained

8    fees received by Defendant" in Count I of the Complaint, Count II contains no

9    reference to "fees" and instead seeks a more general order that Shake Shack "be

10   required to disgorge its unjust profits and make restitution." Compl. ¶¶ 62, 78.

11       California federal courts have repeatedly recognized that when a UCL

12   complaint alleges that the plaintiff would not have purchased the defendant's

13   products at all absent allegedly fraudulent conduct, the CAFA amount-in-controversy

14   analysis looks to the full purchase price of the product—not just the premium

15   attributable to the alleged fraud. In *Turcios v. Carma Laboratories, Inc.*, for instance,

16   the plaintiff brought UCL and other false advertising claims alleging that the

17   defendant's lip balm packaging was deceptive because the amount of product it

18   contained "comprise[d] less than 30% of the jar's volume." 2012 WL 12893989, at

19   *1 (C.D. Cal. Dec. 13, 2012) (citation omitted). In addition to asserting that "had

20   [he] known that the product purchased did not fill the [product's] jar, he would not

21   have paid the premium price that [he] paid for it, but less," the plaintiff's complaint

22   also stated that he would have "purchased a substitute product" and that he "would

23   not have purchased [the product], but for [d]efendant['s] misleading packaging of the

24   product." *Id.* at 2. (citation omitted). Denying the plaintiff's motion to remand for

25   failure to satisfy the CAFA amount in controversy, the court reasoned that, although

26   some of the plaintiff's allegations suggested that he was seeking "less than the full

27   purchase price," his statement that he would not have bought the product at all was

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3

SHAKE SHACK'S RESPONSE
TO ORDER TO SHOW CAUSE
CASE NO. 2:25-CV-01734

1    sufficient to establish "that the total purchase price could be the basis for restitution."
2    *Id.*

3        Likewise, in *McConnon v. Kroger Co.*, the plaintiff "alleged, albeit
4    alternatively, that she would not have bought the [defendant's product] had she
5    known it was 'adulterated,' suggesting that the product was worthless to her and that
6    she is entitled to a full refund." 2024 WL 2132509, at *3 (C.D. Cal. May 10, 2024).
7    Accordingly, the court found that "the full cost of the product may be considered for
8    jurisdictional purpose" and exercised CAFA jurisdiction. *Id.*; *see also Hawkins v.*
9    *Walmart, Inc.*, 2024 WL 3913472, at *3 (E.D. Cal. Aug. 23, 2024) ("Hawkins'
10   request for restitution of the amounts paid for the Avocado Oil and his allegations
11   that, but for the alleged false advertisement, he and the putative class members would
12   not have purchased the Avocado Oil or would have paid less for it, can reasonably
13   be construed as seeking, at least in the alternative, the full purchase price in
14   damages."); *Lokey v. CVS Pharmacy, Inc.*, 2020 WL 5569705, at *4 (N.D. Cal. Sept.
15   17, 2020) (plaintiff's allegation that "she would not have purchased the more
16   expensive infants' medicine" but for the defendant's alleged misrepresentation
17   "plausibly allege[d] restitution, and a resulting full refund, as a theory of recovery"
18   for CAFA purposes); *Stern v. RMG Sunset, Inc.*, 2018 WL 2296787, at *6 (S.D. Cal.
19   May 21, 2018) (considering "the full cost of the meals" ordered at defendant's
20   restaurants as part of amount in controversy, not just the service fee that the defendant
21   allegedly failed to disclose, based on allegation that "[h]ad [p]laintiff known about
22   the undisclosed [f]ee, [he] would not have eaten at [d]efendants' restaurant").

23       Just as in *Turcio*, *McConnon*, *Hawkins*, *Lokey*, and *Stern*, Plaintiff here
24   alleges—at least as one theory of recovery—that she would not have bought food
25   from Shake Shack at all were it not for the alleged "drip pricing" challenged in the
26   Complaint. The settled case law provides that regardless of what Plaintiff may or
27   may not be able to prove as litigation proceeds, this allegation warrants consideration
28   of the entire amount of Shake Shack's delivery revenue as part of the amount in

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

4

SHAKE SHACK'S RESPONSE
TO ORDER TO SHOW CAUSE
CASE NO. 2:25-CV-01734

controversy.  *See Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe.").  There is no dispute that this amount, $5,931,619, satisfies CAFA's jurisdictional threshold of $5 million.

### B.    Plaintiff's Request for Attorneys' Fees Further Increases the Amount in Controversy.

Plaintiff additionally seeks to recover the "reasonable costs and expenses of suit, including attorneys' fees." Compl. at 15.  "[W]hen a statute or contract provides for the recovery of attorneys' fees," as the Consumer Legal Remedies Act ("CLRA") does, "prospective attorneys' fees must be included in the assessment of the amount in controversy."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019); Cal. Civ. Code § 1780(e).  Plaintiff's CLRA claim currently seeks injunctive relief only, so it is difficult to ascertain the total fee award that her counsel might seek or obtain—including because fee awards in injunctive relief actions are often calculated based primarily on counsel's lodestar, rather than a percentage-of-the-fund approach.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941–43 (9th Cir. 2011).  Nevertheless, any award of attorneys' fees under the CLRA would further increase the amount in controversy above $5 million, providing additional certainty that federal jurisdiction is proper here.

### III.   CONCLUSION

For the reasons set forth above, the CAFA jurisdictional minimum is satisfied, and the Court has jurisdiction over this action.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

5

SHAKE SHACK'S RESPONSE
TO ORDER TO SHOW CAUSE
CASE NO. 2:25-CV-01734

Respectfully submitted,

Dated:        March 12, 2025             COOLEY LLP


By: */s/ Michelle C. Doolin*
        Michelle C. Doolin

Attorney for Defendant
SHAKE SHACK INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

6

SHAKE SHACK'S RESPONSE
TO ORDER TO SHOW CAUSE
CASE NO. 2:25-CV-01734